## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ANTHONY KOSTENDT, Individually and on Behalf of All Others Similarly Situated, | Civil Action No. 21-7904 |
| Plaintiff, | <u>CLASS ACTION</u> |
| v. | COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAW |
| OATLY GROUP AB, TONI PETERSSON, CHRISTIAN HANKE, FREDRIK BERG, STEVEN CHU, ANN CHUNG, BERNARD HOURS, HANNAH JONES, MATTIAS KLINTEMAR, PO SING (TOMAKIN) LAI, ERIC MELLOUL, BJÖRN ÖSTE, FRANCES RATHKE, YAWEN WU, and TIM ZHANG, | <u>DEMAND FOR JURY TRIAL</u> |
| Defendants. | |

Plaintiff Anthony Kostendt ("Plaintiff"), individually and on behalf of all others similarly situated, by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants, alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts; and upon information and belief as to all other matters based on the investigation conducted by and through Plaintiff's attorneys, which included, among other things, a review of the U.S. Securities and Exchange Commission ("SEC") filings by Oatly Group AB ("Oatly" or the "Company"), press releases and other announcements by the Company, and media reports about the Company. Plaintiff believes that substantial, additional, evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## INTRODUCTION

1.      This is a securities class action on behalf of all person or entities who purchased or otherwise acquired Oatly securities between May 20, 2021 and July 15, 2021 (the "Class Period"), against Oatly and certain of its officers and/or directors, for violations of the U.S. Securities Exchange Act of 1934 (the "Exchange Act") and SEC Rule 10b-5 promulgated thereunder.

2.      Oatly describes itself as the world's original and largest oatmilk company. It is organized under the laws of Sweden. Its American Depositary Shares ("ADSs") are listed and trade on the NASDAQ Global Market ("NASDAQ") under the ticker symbol "OTLY."

3.      Oatly held its initial public offering ("IPO") in the United States on or around May 20, 2021, offering and selling 84,376,000 ADSs (including 19,688,000 from certain shareholders) at a price of $17.00 per share. Each ADS represents one Oatly ordinary share. The IPO raised $1.4 billion for the Company.

4.      Two months later, on July 14, 2021, before the markets opened, short seller Spruce Point Capital Management, LLC ("Spruce Point") issued a report titled, "Sour on an Oat-lier Investment" (the "Spruce Point Report" or the "Report"). The Report brought to light a number of improprieties at Oatly, including improper accounting practices and greenwashing (making the Company's product appear more sustainable than it actually is), among other issues.

5.      Over the following days, a number of media outlets reported on the Spruce Point Report and its allegations about Oatly.

6.      Following this news, the price of Oatly ADSs fell 7.8% over two trading days, falling from a price of $21.13 on July 13, 2021 to a price of $19.48 on July 15, 2021, on unusually high trading volume.

## JURISDICTION AND VENUE

7.      Jurisdiction is conferred by §27 of the 1934 Act. The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

8.      Venue is proper here pursuant to §27 of the Exchange Act. Oatly's ADSs are listed on the NASDAQ, which is located in this District, and many of the acts and transactions giving rise to the violations of law complained of occurred here. Oatly maintains offices in the United States in this District. The depositary of Oatly ADSs, JPMorgan Chase Bank, N.A., is also located in this District.

9.      In connection with the acts alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications and the facilities of the national securities markets.

## THE PARTIES

10.     Plaintiff Anthony Kostendt purchased Oatly securities as described in the attached certification, incorporated herein, and was damaged thereby.

11.     Defendant Oatly describes itself as the world's original and largest oatmilk company. It is organized under the laws of Sweden and its headquarters are in Sweden. Its ADSs are listed and trade on the NASDAQ under the ticker "OTLY." Oatly maintains U.S. offices at 220 E. 42nd Street, Suite 409A, New York, New York 10017.

12.     Defendant Toni Petersson ("Petersson") is, and at all relevant times was, the Chief Executive Officer ("CEO") of Oatly. Petersson signed the Registration Statement.

13.     Defendant Christian Hanke ("Hanke") is, and at all relevant times was, the Chief Financial Officer ("CFO") of Oatly. Hanke signed the Registration Statement.

14.     Defendant Fredrik Berg ("Berg") is, and at all relevant times was, a member of Oatly's Board of Directors. Berg signed the Registration Statement.

15.     Defendant Ann Chung ("Chung") is, and at all relevant times was, a member of Oatly's Board of Directors. Chung signed the Registration Statement.

16.     Defendant Bernard Hours ("Hours") is, and at all relevant times was, a member of Oatly's Board of Directors. Hours signed the Registration Statement.

17.     Defendant Hannah Jones ("Jones") is, and at all relevant times was, a member of Oatly's Board of Directors. Jones signed the Registration Statement.

18.     Defendant Mattias Klintemar ("Klintemar") is, and at all relevant times was, a member of Oatly's Board of Directors. Klintemar signed the Registration Statement.

19.     Defendant Po Sing (Tomakin) Lai ("Lai") is, and at all relevant times was, a member of Oatly's Board of Directors. Lai signed the Registration Statement.

20.     Defendant Eric Melloul ("Melloul") is, and at all relevant times was, a member of Oatly's Board of Directors. Melloul signed the Registration Statement.

21.     Defendant Björn Öste ("Öste") is, and at all relevant times was, a member of Oatly's Board of Directors. Öste signed the Registration Statement. Öste is also a "selling shareholder," who personally sold shares in the IPO.

22.     Defendant Yawn Wu ("Wu") is, and at all relevant times was, a member of Oatly's Board of Directors. Wu signed the Registration Statement.

23.     Defendant Tim Zhang ("Zhang") is, and at all relevant times was, a member of Oatly's Board of Directors. Zhang signed the Registration Statement.

24.     Defendants Petersson, Hanke, Berg, Chung, Hours, Jones, Klintemar, Lai, Melloul, Öste, Wu, and Zhang, (the "Individual Defendants"), because of their positions with the Company, possessed the power and authority to control the contents of Oatly's filings with the SEC, press releases, and presentations to securities analysts, money and portfolio managers and institutional investors, i.e., the market. They were provided with copies of the Company's reports and press releases alleged herein to be misleading prior to or shortly after their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected. Because of their positions with the Company, and their access to material non-public information available to them but not to the public, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to and were being concealed from the public and that the positive representations being made were then materially false and misleading. The Individual Defendants are liable for the false statements pleaded herein at ¶¶32-41.

## FRAUDULENT SCHEME AND COURSE OF BUSINESS

25.     Defendants are liable for: (i) making false statements; or (ii) failing to disclose adverse facts known to them about Oatly. Defendants' fraudulent scheme and course of business that operated as a fraud or deceit on purchasers of Oatly securities was a success, as it: (i) deceived the investing public regarding Oatly's prospects and business; (ii) artificially inflated the prices of Oatly securities; and (iii) caused Plaintiff and other members of the Class to purchase Oatly securities at inflated prices.

## BACKGROUND

26.     Oatly was founded in 1994, and its current holding company was incorporated in accordance with Swedish law on October 5, 2016, under the name Goldcup 13678 AB. On December 21, 2016, Oatly changed its name to Havre Global AB and on March 1, 2021, it changed its name to Oatly Group AB.

27.     Oatly held U.S. IPO on or around May 20, 2021, offering and selling 84,376,000 ADSs (including 19,688,000 from certain "selling shareholders," including Öste) at a price of $17 per share. Each ADS represents one Oatly ordinary share. The IPO raised $1.4 billion for the Company.

28.     In connection with the IPO, Oatly first filed a draft Form F-1 Registration Statement with the SEC on April 19, 2021. An amended Registration Statement was filed on May 11, 2021, and another on May 17, 2021. On May 17, 2021, Oatly filed its final Prospectus Supplement, which forms part of the Registration Statement. On May 19, 2021, the SEC issued a Notice of Effectiveness of the Registration Statement.

## SUBSTANTIVE ALLEGATIONS

### Defendants' Materially False And Misleading Statements During The Class Period

29.     The Class Period starts on May 20, 2021, the first day Oatly began trading on the NASDAQ, after the Registration Statement became effective.

30.     The Registration Statement made misleading statements about the Company's financial metrics, sustainability, and growth in China.

31.     In June 2021, the Company published an "Investor Presentation" on its website. The Investor Presentation also made misleading statements about the Company's financial metrics, sustainability, and growth in China.

32.     For example, the Registration Statement stated, in pertinent part, as follows:

> Our historical financial performance reflects the scaled and global growth profile of our company. In the three months ended March 31, 2021, we reported revenue of $140.1 million, a 66.2% increase from $84.2 million in the same period in 2020. In 2020, we reported revenue of $421.4 million, a 106.5% increase from $204.0 million in 2019. This growth outpaces our year-over-year growth in 2019 of 72.9%, representing our accelerating momentum. In the three months ended March 31, 2021, we generated gross profit of $41.9 million, representing a margin of 29.9% and a loss for the period of $32.4 million. In 2020, we generated gross profit of $129.2 million, representing a margin of 30.7%, and, as a result of our continued focus on our growth, a loss for the year of $60.4 million, reflecting our continued investment in production, brand awareness, new markets and product development. Going forward, we intend to continue to invest in our innovation capabilities, build our manufacturing footprint and expand our consumer base all supporting our growth trajectory.

33.     The Registration Statement also stated, in pertinent part, as follows:

> Revenue increased by $217.3 million, or 106.5%, to $421.4 million for the year ended December 31, 2020, net of sales discounts, rebates and trade promotions, from $204.0 million for the year ended December 31, 2019, which was primarily a result of additional supply provided from our Millville, New Jersey and Vlissingen, the Netherlands plants. In addition, we launched an exclusive arrangement with Starbucks in Asia, which created a

significant demand for our oatmilk products in China in particular. Our revenue increased despite the partial shutdown of the food services channel in some of our larger markets in EMEA and the United States due to the COVID-19 pandemic, as we offset this decline with a significant increase in retail volumes.

34.     The Registration Statement also stated, in pertinent part, as follows:

Gross profit increased by $62.7 million, or 94.1%, to $129.2 million for the year ended December 31, 2020 from $66.6 million. Gross margin decreased by 1.9%, to 30.7% for the year ended December 31, 2020 from 32.6% for the year ended December 31, 2019, which is due to a number of factors, including a change in channel mix from foodservice to retail, our greater reliance on co-packer outsourcing production compared to 2019 as well as an increase in logistics costs. The COVID-19 pandemic and changing consumption patterns increased demand for logistics services, resulting in higher freight rates during the second half of 2020 across our segments. We also experienced higher container rates for our shipments from EMEA to Asia during 2020.

35.     The Registration Statement also stated, in pertinent part, as follows:

[O]ur proven end-to-end manufacturing operations in Sweden demonstrates that our investment in owned manufacturing capabilities will drive an improved margin profile due to more favorable economics.

36.     The Registration Statement also stated, in pertinent part, as follows:

Sustainability is at the core of our business and actionable in our products: on average, a liter of Oatly product consumed in place of cow's milk results in around 80% less greenhouse gas emissions, 79% less land usage and 60% less energy consumption. This equation is our primary mechanism for impact. Our products make it easy for people to turn what they eat and drink into personal moments of healthy joy without excessively taxing the planet's resources in the process. Beyond the inherent properties of our products, we execute a sustainability agenda across our value chain that encompasses agriculture, innovation, production, advertising and more. Sustainability at Oatly is far more than achieving certain key performance indicators and corporate policies—it is a mindset that helps us navigate business decisions and build a culture that is singularly focused on pushing the boundaries of the plant-based movement.

37.     Regarding the Company's supposed growth in China, the Registration Statement stated, in pertinent part, as follows:

> To enter new markets, we use a foodservice-led expansion strategy that builds awareness and loyalty for our brand through the specialty coffee market and ultimately drives increased sales through retail channels. We have tailored this strategy in many successful international market launches, including the United Kingdom, Germany, the United States and China.
>
> Our growth in China demonstrates the effectiveness of this expansion strategy. We successfully entered the Chinese market in 2018 through the specialty coffee and tea channel, which we have since scaled to over 8,000 doors at the end of 2020. As a result of the consumer excitement we built around the Oatly brand with this launch, we were able to rapidly scale our regional presence through a strategic e-commerce partnership with Alibaba and an exclusive branded partnership with Starbucks in China, with over 4,700 locations in China exclusive to us as of December 31, 2020. Within approximately two years of entering the Chinese market, we had over 9,500 foodservice and retail points of sale in total with a growth rate of over 450% as of December 31, 2020. We have built a new generation of plant-based milk consumers by converting traditional dairy milk drinkers to Oatly and by attracting new drinkers to the category altogether. The awareness and in- context trial achieved in the specialty coffee and tea channel was critical to educate the market about plant-based dairy and establish our leadership in the region.

38.     The Registration Statement also stated, in pertinent part, as follows:

> Since our founding, we have had a bold vision for a food system that's better for people and the planet. We believe that transforming the food industry is necessary to face humanity's greatest challenges across climate, environment, health and lifestyle. Traditional food production is one of the biggest drivers of environmental impact. Food production uses about half of all habitable land on earth, requires large amounts of resources, emits greenhouse gases and harms biodiversity. At the same time, today's food system—and often our eating habits—does not meet our nutritional needs, driving the prevalence of non-communicable diseases like malnutrition, obesity and heart and vascular diseases. Through our products and actions as a company, we work to grow the plant-based movement and help people shift from traditional dairy to plant-based products and enact positive societal and

8

industry change. Sustainability is at the core of our business and actionable in our products: on average, a liter of Oatly product consumed in place of cow's milk results in around 80% less greenhouse gas emissions, 79% less land usage and 60% less energy consumption. This equation is our primary mechanism for impact. Our products make it easy for people to turn what they eat and drink into personal moments of healthy joy without excessively taxing the planet's resources in the process. Beyond the inherent properties of our products, we execute a sustainability agenda across our value chain that encompasses agriculture, innovation, production, advertising and more. Sustainability at Oatly is far more than achieving certain key performance indicators and corporate policies—it is a mindset that helps us navigate business decisions and build a culture that is singularly focused on pushing the boundaries of the plant- based movement.

39.     The Investor Presentation repeated many of the misrepresentations in the Registration Statement.

40.     The Investor Presentation also stated, in pertinent part, that Oatly's revenues have increased 86% and its gross profit margins have increased 62% since 2018. In addition, the Investor Presentation stated that the Company had $12 million in U.S. revenue in 2018.

41.     In addition, the Investor Presentation stated, in pertinent part:

The conversion from cow's milk to Oatly results in: 80% fewer carbon emissions; 79% less land usage; and 60% less energy use. This equation is our primary mechanism for impact.

42.     The statements set forth in ¶¶32-41, were materially misleading. The true facts, which were known or recklessly disregarded by the Defendants but concealed from the investing public, were as follows: during the Class Period, Oatly (a) overinflated its gross margins, revenue, capital expenditure, and market share financial metrics; (b) overstated its sustainability practices and impact; (c) exaggerated its growth in China; and (d) as a result of the foregoing,

Oatly's statements about its operations, business, and prospects were misleading during the Class Period.

## **THE TRUTH IS REVEALED**

43.     On July 14, 2021, before the market opened, short seller Spruce Point issued a Report entitled, "Sour on an Oat-lier Investment." The 124-page Report detailed a wide array of misconduct and misstatements by Oatly, including that it has wrongfully overstated: a number of its financial metrics including revenue, gross margin, capital expenditures, and market share; its sustainability practices and impact; and its growth story in China, among other things. The Report was based on a review of Oatly's financial and other statements as well as interviews with former employees and other investigative work like site visits.

44.     According to Spruce Point's Report, Oatly's revenue metrics are "insufficient and not what we expect from a company with a 20-year operational history." For example, the Registration Statement did not disclose new sales for new products over the previous 36 months. In addition, "[d]iscounts, rebates and coupons are deducted from gross to reported net revenues. Oatly doesn't provide a bridge so investors can gauge promotional activity[.]"

45.     With respect to sales, the Spruce Point Report points out that, "Oatly's 2018 U.S. sales can't be reconciled and vary by 100%. Both Nielsen and a Swedish magazine reported $6m of sales in 2018, whereas Oatly [] disclosed $12m of sales in [the] [I]nvestor [P]resentation."

46.     The Spruce Point Report alleged related accounting improprieties, citing a "Former Oatly Accounting Professional" who said "the state of accuracy" of Oatly's accounting is the number one risk of investing in the Company.

47.     Regarding Oatly's sustainability practices, the Report states, in pertinent part:

> [Spruce Point] takes issue with how Oatly presents its
> [sustainability] progress to investors as the first slide of its Investor

Presentation (June 2021). The analysis is based on a 2013 study (updated in 2016) which doesn't include its recent expansion into the U.S. and Asia, which we believe have been poorly planned and executed. In addition, we believe Oatly has "cherry-picked" the study's results by failing to show that its impact on water consumption is worse than dairy milk. Through a FOIA request, we learned that Oatly's production process also generates dangerous volumes of wastewater that requires it to build its own treatment facilities. Oatly is even out of compliance with EPA regulations in NJ. Oatly's first study discusses the importance of transportation costs, accounting for nearly 1/3rd of its environmental impact. Yet, in Oatly's quest for rapid business growth and its race to IPO, we believe it has recklessly disregarded these costs, and also sought to obscure the impact of shipping costs in its financial statements. Oatly also says 49% of its current climate impact comes from ingredients, with 73% of this ingredient impact tied to oats. It stands to reason that Oatly should be locating its facilities as close as possible to its oat supply. However, we find evidence that Oatly has not only located production facilities thousands of miles from its oat sources, but also massively overpaid and run wildly overbudget in its capital planning. Now as a public company, we believe Oatly is asking investors to pour nearly $1.0 billion into existing and expansionary capex to fix management's blunders. We estimate cost per liter of new capacity will cost upwards of 77% more than Oatly's historical cost and continue to make its business non-economical. Oatly took flack for the investment it received from Blackstone in 2020 when an activist pointed out a connection to the deforestation of the Amazon. However, Spruce Point also points out the Oatly uses Olam International for its supply of Cocoa. Olam has often been criticized for not being transparent and contributing to deforestation and endangerment of species in Africa.

48.     Regarding Oatly's supposed growth in China, the Report states, in pertinent part:

Oatly is claiming 2020 sales growth of 450% in China, and substantial ecommerce success with 21% of sales through the channel. However, it doesn't say that it failed earlier in its China ambitions, and that it has made conflicting statements about how it succeeded this time around.

49.     In addition, the Report stated, in pertinent part:

There is evidence of exaggerated claims made regarding Oatly's China business. Its Asian president made a statement in China during September 2020 that mainland China had more than 10,000 cafes. However, SEC filings indicate that China foodservice

(coffee and tea shops) were closer to 8,000 –8,200 locations.

50.     In addition, the Report stated, in pertinent part:

> Spruce Point sent an investigator to check on Oatly's Maanshan China operations. Oatly claims it will be in production by the second half of 2021. However, based on our evidence it has materially fallen behind stated production plans in Utah and New Jersey, we were skeptical of Oatly's claims. What we found was a facility that we believe is unlikely to be operational soon.

51.     The same day that the Spruce Point Report was published online, and over the following days, a number of news outlets reported on the Report.

52.     On July 14, 2021, CNBC published a story entitled, "Oatly accused of overstating revenue and greenwashing by activist short Spruce Point." Regarding the accounting allegations, the CNBC article noted that, "the [] report points to the company's recent investor presentation, which showed estimated 2018 U.S. revenue of $12 million[, but that] Nielsen and Umgas Magazine, a Swedish publication, reported that Oatly's net U.S. sales were just $6 million in 2018." In addition, CNBC highlighted that Spruce Point "observed periods of large divergence in revenue and accounts receivable growth rates at Oatly[,]" which "is a classic sign of potential accounting shenanigans and is often cited as a top red flag to predict accounting scandals."

53.     The CNBC article also reported that Spruce Point alleged that Oatly is overstating its gross margin, and that the Company "does not include outbound shipping and handling costs in its calculations" or "disclose that its gross profit presentation is not comparable to that of other food companies." The Report alleges that Oatly's gross margin is actually 6.4% lower when logistics and shipping are factored in." In addition, CNBC highlighted that Spruce Point, "claimed to find anomalies about Oatly's capital expenditures between its cash flow statement and additions to the balance sheet."

54.     On this and other similar news, the price of Oatly ADSs fell 2.8%, from a closing price of $21.13 on July 13, 2021 to a closing price of $20.54 on July 14, 2021.

55.     On July 15, 2021, there was more coverage of the Report by news outlets.   For example, at 10:16 a.m., *Fortune* published an article entitled, "Wild Oats? Inside Spruce Point's 124-Page Attack Alleging Mismanagement And False Claims At Oatly." *Fortune* described the Report as "the results of an extensive investigation into Oatly[.]"

56.     On this news, the price of Oatly ADSs fell 5.16%, closing at $19.48 per ADS on July 15, 2021. Together with the July 14, 2021 price drop, this was a two-day decline of 7.8%, with both days experiencing unusually high trading volume.

## ADDITIONAL SCIENTER ALLEGATIONS

57.     As alleged herein, Oatly and the Individual Defendants acted with scienter in that they: (i) knew that the public documents and statements issued or disseminated in the name of the Company were materially false and misleading; (ii) knew that such statements or documents would be issued or disseminated to the investing public; and (iii) knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws. As set forth herein in detail, the Individual Defendants, by virtue of their receipt of information reflecting the true facts regarding Oatly, their control over, and/or receipt and/or modification of Oatly's allegedly materially misleading statements and/or their associations with the Company which made them privy to confidential proprietary information concerning Oatly, participated in the fraudulent scheme alleged herein.

## LOST CAUSATION AND ECONOMIC LOSS

58.     During the Class Period, as detailed herein, Defendants engaged in a scheme to deceive the market and a course of conduct that artificially inflated the prices of Oatly securities

and operated as a fraud or deceit on purchasers of Oatly securities. As detailed above, when the truth about Oatly's misconduct was revealed, the value of Oatly securities declined precipitously as the prior artificial inflation no longer propped up the price of securities. The decline in the price of Oatly securities was the direct result of the nature and extent of Defendants' fraud finally being revealed to investors and the market. The timing and magnitude of the share price decline negate any inference that the losses suffered by Plaintiff and other members of the Class were caused by changed market conditions, macroeconomic or industry factors, or Company-specific facts unrelated to Defendants' fraudulent conduct. The economic loss, i.e., damages, suffered by Plaintiff and other Class members was a direct result of Defendants' fraudulent scheme to artificially inflate the prices of Oatly securities and the subsequent significant decline in the value of Oatly securities when Defendants' prior misrepresentations and other fraudulent conduct were revealed.

59.    At all relevant times, Defendants' materially false and misleading statements or omissions alleged herein directly or proximately caused the damages suffered by Plaintiff and other Class members. Those statements were materially false and misleading through their failure to disclose a true and accurate picture of Oatly's business, operations and financial results as alleged herein. Throughout the Class Period, Defendants issued materially false and misleading statements and omitted material facts necessary to make Defendants' statements not false or misleading, causing the price of Oatly securities to be artificially inflated. Plaintiff and other Class members purchased Oatly securities at those artificially inflated prices, causing them to suffer damages as complained of herein.

## APPLICABILITY OF PRESUMPTION OF RELIANCE

60.      Plaintiff and the Class are entitled to a presumption of reliance under *Affiliated Ute Citizens v. United States*, 406 U.S. 128 (1972), because the claims asserted herein against Defendants are predicated upon omissions of material fact for which there was a duty to disclose.

61.      Plaintiff and the Class are also entitled to a presumption of reliance pursuant to *Basic Inc. v. Levinson*, 485 U.S. 224 (1988), and the fraud-on-the-market doctrine because the market for Oatly securities was an efficient market at all relevant times by virtue of the following factors, among others:

> (a)      Oatly ADSs met the requirements for listing, and were listed and actively traded on NASDAQ, a highly efficient market;

> (b)      Oatly regularly communicated with public investors via established market communication mechanisms, including the regular dissemination of press releases on the national circuits of major newswire services and other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and

> (c)      Oatly was followed by a number of securities analysts employed by major brokerage firms who wrote reports which were distributed to the sales force and certain customers of their respective brokerage firms. These reports were publicly available and entered the public marketplace.

62.      As a result of the foregoing, the market for Oatly securities promptly incorporated current information regarding the Company from publicly available sources and reflected such information in the prices of the securities. Under these circumstances, all those who transacted in

Oatly securities during the Class Period suffered similar injury through their transactions in Oatly securities at artificially inflated prices and a presumption of reliance applies.

63.     Without knowledge of the misrepresented or omitted material facts, Plaintiff and other Class members purchased or acquired Oatly securities between the time Defendants misrepresented and failed to disclose material facts and the time the true facts were disclosed. Accordingly, Plaintiff and other Class members relied, and are entitled to have relied, upon the integrity of the market prices for Oatly securities, and are entitled to a presumption of reliance on Defendants' materially false and misleading statements and omissions during the Class Period.

## **FIRST CAUSE OF ACTION**

### **For Violation of §10(b) of the Exchange Act and Rule 10b-5 Against All Defendants**

64.     Plaintiff incorporates ¶¶1-63 by reference.

65.     During the Class Period, Defendants disseminated or approved the false statements specified above, which they knew or deliberately disregarded were misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

66.     Defendants violated §10(b) of the Exchange Act and Rule 10b-5 in that they:

(a)     employed devices, schemes and artifices to defraud;

(b)     made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or

(c)     engaged in acts, practices and a course of business that operated as a fraud or deceit upon Plaintiff and others similarly situated in connection with their purchases of Oatly securities during the Class Period.

67.     Plaintiff and the Class have suffered damages in that, in reliance on the integrity of the market, they paid artificially inflated prices for Oatly securities. Plaintiff and the Class would not have purchased Oatly securities at the prices they paid, or at all, if they had been aware that the market prices had been artificially and falsely inflated by Defendants' misleading statements.

## SECOND CAUSE OF ACTION

### For Violation of §20(a) of the Exchange Act
### Against All Defendants

68.     Plaintiff incorporates ¶¶1-67 by reference.

69.     The Individual Defendants acted as controlling persons of Oatly within the meaning of §20(a) of the Exchange Act. By reason of their positions with the Company, the Individual Defendants had the power and authority to cause Oatly to engage in the wrongful conduct complained of herein. Oatly controlled the Individual Defendants and all of its employees.   By reason of such conduct, Defendants are liable pursuant to §20(a) of the Exchange Act.

## CLASS ACTION ALLEGATIONS

70.     Plaintiff brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of all person or entities who purchased or otherwise acquired Oatly securities during the Class Period (the "Class"). Excluded from the Class are Defendants and their families.

71.     The members of the Class are so numerous that joinder of all members is impracticable. The disposition of their claims in a class action will provide substantial benefits to the parties and the Court. Oatly issued 84.4 million ADSs in the IPO and those ADSs are owned by hundreds, if not thousands, of persons, or more.

72.     There is a well-defined community of interest in the questions of law and fact involved in this case. Questions of law and fact common to the members of the Class which predominate over questions which may affect individual Class members include:

(a)     whether the Exchange Act was violated by Defendants;

(b)     whether Defendants omitted and/or misrepresented material facts;

(c)     whether Defendants' statements omitted material facts necessary to make the statements made, in light of the circumstances under which they were made, not misleading;

(d)     whether Defendants knew or deliberately disregarded that their statements were false and misleading;

(e)     whether the prices of Oatly securities were artificially inflated; and

(f)     the extent of damage sustained by Class members and the appropriate measure of damages.

73.     Plaintiff's claims are typical of those of the Class because Plaintiff and the Class sustained damages from Defendants' wrongful conduct.

74.     Plaintiff will adequately protect the interests of the Class and has retained counsel who are experienced in class action securities litigation. Plaintiff has no interests which conflict with those of the Class.

75.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment as follows:

A.     Declaring this action to be a proper class action pursuant to Federal Rule of Civil Procedure 23;

B.      Awarding Plaintiff and the members of the Class damages, including interest;

C.      Awarding Plaintiff's reasonable costs and attorneys' fees; and

D.      Awarding such equitable/injunctive or other relief as the Court may deem just

and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.


Dated: September 22, 2021

                                        Respectfully submitted,

                                        /s/  Jack G. Fruchter
                                        Jack G. Fruchter (JF-8435)
                                        **ABRAHAM, FRUCHTER & TWERSKY, LLP**
                                        450 Seventh Avenue, 38th Floor
                                        New York, NY 10123
                                        Telephone: (212) 279-5050
                                        Facsimile: (212) 279-3655
                                        Email: JFruchter@aftlaw.com

                                        *Counsel for Plaintiff*

## CERTIFICATION OF PLAINTIFF
## PURSUANT TO THE FEDERAL SECURITIES LAWS

I, Anthony Kostendt, hereby declare as follows:

1.      I have reviewed the Complaint against Oatly Group AB ("Oatly" or the "Company") and authorize its filing on my behalf.

2.      I did not purchase or otherwise acquire the securities that are the subject of this action at the direction of plaintiff's counsel or in order to participate in this or any private action under the federal securities laws or any other laws.

3.      I am willing to serve as a representative party on behalf of a class, including providing testimony at deposition and trial, if necessary.

4.      The attached schedule includes all of my transaction(s) in Oatly securities during the Class Period set forth in the Complaint.

5.      During the three years prior to the date of this Certification, I have not served nor sought to serve as a representative on behalf of a class in any actions filed pursuant to the federal securities laws.

6.      I will not accept any payment for serving as a representative party on behalf of the class beyond its pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the class as ordered by the Court.

I declare under penalty of perjury that the foregoing is true and correct. Executed this _____th day of September, 2021.

ANTHONY KOSTENDT

## SCHEDULE A

Plaintiff's Transactions During the Class Period
Oatly Group AB (OTLY)

| DATE | TRANSACTION TYPE | QUANTITY | PRICE |
|------|------------------|----------|-------|
| 05/20/2021 | Purchase | 1,000 | $21.6300 |